# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERRI L. WILSON,<br><br>   Plaintiff,<br><br>   v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>   Defendant. | Case No. CV 16-09330-RAO<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. **INTRODUCTION**

Plaintiff Kerri L. Wilson ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability, disability insurance benefits ("DIB"), and supplemental security income ("SSI"). For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED.

## II. **PROCEEDINGS BELOW**

On October 9, 2012, Plaintiff protectively filed a Title II claim for DIB. (Administrative Record ("AR") 112.) On October 16, 2012, Plaintiff also filed a Title XVI application for SSI. (AR 113.) Plaintiff alleged disability beginning November 27, 2011. (AR 114, 126.) Her applications were denied initially on

February 25, 2013, and upon reconsideration on October 31, 2013. (AR 180, 183, 188.) On December 24, 2013, Plaintiff filed a written request for hearing, and a hearing was held on April 7, 2015. (AR 53.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 55-89.) On May 14, 2015, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act,[1] since November 27, 2011. (AR 42-43.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1.) Plaintiff filed this action on December 17, 2016. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 27, 2011, the alleged onset date ("AOD"). (AR 31.) At **step two**, the ALJ found that Plaintiff's Crohn's disease is a severe impairment. (*Id.*) At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 33.)

Before proceeding to step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." (AR 34.) At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff was capable of performing past relevant work as a sandwich maker. (AR 40.) The ALJ also made an alternative **step five** finding that there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform. (AR 41-

---

[1] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

2

42.) Accordingly, the ALJ determined that Plaintiff has not been under a disability from the AOD through the date of the decision. (AR 42.)

## III. **STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins,* 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises the following issues for review: (1) whether the ALJ properly evaluated the severity of Plaintiff's Crohn's disease; and (2) whether the ALJ properly assessed Plaintiff's testimony. (Joint Stipulation ("JS") 3-4, 16.) Plaintiff contends that the ALJ erred in failing to consider whether Plaintiff's condition medically equaled a listed impairment and erred in assessing Plaintiff's credibility. (*See* JS 4-11, 16-28.) The Commissioner disagrees. (*See* JS 11-15, 28-34.) For the reasons below, the Court agrees with Plaintiff on the issue of her credibility and remands on that ground.

### A. The ALJ's Credibility Determination Is Not Supported By Substantial Evidence

Plaintiff argues that the ALJ failed to provide legally sufficient reasons to reject her testimony. (*See* JS 28.) The Commissioner argues that the ALJ's credibility findings are supported by substantial evidence. (*See* JS 33.)

#### 1. Plaintiff's Testimony

Plaintiff lives in an apartment with her boyfriend. (AR 56.) She finished the eleventh grade and received college certificates in business communications, mathematics, and computer application. (AR 57.) Plaintiff last worked as a sandwich maker at Subway in 2010. (AR 58.)

Plaintiff testified that her worst medical issue is her extreme abdominal pain due to Crohn's disease. (AR 59.) Plaintiff explained that it is a constant pain that varies "like a contraction," from a "minor" level of 3 or 4 "all the way up to ten-plus." (AR 59-60.) Plaintiff stated that her pain was currently a 3 or 4 during the hearing. (AR 60.) Plaintiff underwent a bowel resection and a partial right colectomy, but she did not remember the dates of her procedures. (*Id.*)

Plaintiff testified that she is currently taking Norco 5-325 for pain, tramadol for breakthrough pain, omeprazole for heartburn, and nortriptyline. (AR 60-61.) Plaintiff stated that she is also treated with Remicade, an anti-immune drug that is

4

administered intravenously. (AR 61, 83.) Plaintiff explained that she has scars from the IVs, and her doctors sometimes have a hard time getting the IVs started. (AR 83.) She also stated that she was going to get an IV access port inserted in her chest a few days after the hearing. (*Id.*) Plaintiff explained that her medications help stabilize her "to a degree," but she suffers from side effects such as anxiety and trouble sleeping. (AR 61-62.) Plaintiff sleeps an average of six hours per night. (AR 63.) Plaintiff also "go[es] from one extreme to the other," suffering from both constipation and diarrhea, as a result of her medications. (AR 84.)

Plaintiff stated that she goes to an average of three doctor appointments per month. (AR 62, 83-84.) Two of the appointments last for at least two hours each, and the Remicade appointment is "an all-day thing," taking about six hours including transportation. (AR 62, 84.)

Plaintiff testified that she also suffers from depression daily. (AR 60.) Plaintiff takes Prozac, which has kept her stable. (*Id.*) Plaintiff denied having hallucinations and suicide attempts, but she has crying spells "a couple times" each week. (AR 62-63.)

Plaintiff explained that, as a result of her pain and depression, she has difficulty focusing for about two hours out of an eight-hour period. (AR 63-64; *see* AR 81.) About five days per month, she is unable to do anything. (AR 64.) Plaintiff explained that she can walk "a block or two" on a good day and about one block on a typical day. (AR 64-65.) Plaintiff walks "a couple of thousand feet" to the grocery store that is around the corner from her house. (AR 69.) Plaintiff can stand or walk for about 10 or 15 minutes at a time, but if she stands longer than that, she feels dizzy. (AR 65, 67.) During a typical eight-hour period, Plaintiff needs to lie down "really flat" for about a half hour. (AR 65-66.) Plaintiff testified that she does not have a problem with sitting, and "[t]hat could be all day." (AR 65.) Plaintiff also testified that she can push and pull "[a] little bit" with her arms, reach in any direction, use her hands to hold and grasp, use her fingers to pick and

pinch, feel temperature with her fingertips, use her wrists repetitively, push and pull with her legs, use foot pedal controls, and climb stairs. (AR 66-67.)

Plaintiff stated that she has two adult children and two friends. (AR 56, 68.) She and her daughter visit each other occasionally. (AR 68.) Plaintiff also stated that her boyfriend plays softball and she usually goes to watch him at every game. (AR 69.) Plaintiff explained that she used to play softball, but she "had to stop doing that" and has not played since 2012. (AR 69-70.) About three years ago, Plaintiff traveled about 350 miles to see her family, but she has done no other traveling since her AOD. (AR 71-72.) Plaintiff stated that she does not go to restaurants very often. (AR 72-73.) Plaintiff also denied doing any crafts, playing board games, or having any other hobbies. (AR 74-75.) Plaintiff went bowling with friends on Christmas Eve 2013 and last went to the beach in 2014. (AR 74.) Plaintiff also last rode horses in November 2014. (AR 80.)

Plaintiff stated that she can bathe and get dressed by herself. (AR 75.) She goes to the grocery store, gets her medicines, and gets food for her cats. (AR 76.) Plaintiff does laundry, dishes, and other cleaning. (AR 71, 76.) She can make a bed, vacuum, sweep, organize the coffee table, clean the cat box, pick up clothes and towels, and take out the garbage. (AR 76-78.) Plaintiff stated that she also takes care of small plants and her bird feeders. (AR 77.) Plaintiff explained that she cannot go from task to task right away, and she needs to sit down for at least 15 or 20 minutes in between regular chores. (AR 82.) She does the floor cleaning last, then sits for about an hour. (*Id.*)

Plaintiff testified that on a normal day, she takes her medication, makes lunch for her boyfriend and helps him get ready to go to work, eats breakfast, watches television, and talks to her mother. (AR 77-78.) Plaintiff stated that she has "minor flare-ups" of her Crohn's disease about once a month, but it happened about three times in the month prior to the hearing. (AR 79.) Plaintiff's flare-ups cause nausea, severe diarrhea, abdominal pain, and loss of appetite. (*Id.*) Some days

during a flare-up, she cannot get out of bed, and her boyfriend will "take[] over" and cook meals when he comes home from work. (*Id.*) Plaintiff has daily diarrhea and pain with bowel movements even without a flare-up. (AR 84.)

### 2. Applicable Legal Standards

"In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

### 3. Discussion

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (AR 37.) The ALJ relied on the following reasons: (1) activities of daily living; (2) inconsistent statements and conduct; (3) symptoms controlled with medication; and (4) lack of objective medical evidence to support the alleged severity of symptoms. (AR 36-38, 40.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

7

### a. Reason No. 1: Activities of Daily Living

The ALJ noted that Plaintiff described daily activities "that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and he found that Plaintiff's ability to participate in those activities "diminishes the credibility of [her] allegations of functional limitations." (AR 36.) Specifically, the ALJ noted Plaintiff's ability to "perform physically demanding housework on a daily basis such as vacuuming, cleaning the cat box, and taking out the garbage, and to even infrequently perform highly strenuous sports activities such as horseback riding, softball and bowling." (*Id.*) The ALJ found that those activities were inconsistent with an inability to perform light work. (*Id.*)

As part of the credibility determination, the ALJ may consider inconsistencies between the claimant's testimony and her and daily activities. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997); *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Inconsistencies between symptom allegations and daily activities may act as a clear and convincing reason to discount a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991). But a claimant need not be utterly incapacitated to obtain benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). "If a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *accord Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).

The ALJ determined that some of the physical and mental abilities and interactions required by Plaintiff's activities are the same as those necessary for employment. (AR 36.) Specifically, the ALJ noted that Plaintiff performed "physically demanding housework on a daily basis," including vacuuming, cleaning the cat box, and taking out the garbage. (*Id.*) Additionally, Plaintiff testified that

she stopped riding horses only in November 2014, less than six months before the hearing. (AR 80.) She stated that she played softball as a catcher until she "had to stop" playing in 2012—after her AOD of November 27, 2011. (AR 70.) Plaintiff also testified to bowling on one occasion on Christmas Eve 2013. (AR 74.) The ALJ found that, collectively, Plaintiff's daily activities and infrequent "highly strenuous sports activities" indicated that she could perform work "at least at a light exertional level." (AR 36.) The ALJ was permitted to consider these activities and their transferability to the workplace. *See Burch*, 400 F.3d at 680 (finding that an ALJ's adverse credibility determination that relied on a claimant's ability to care for her personal needs, cook, and clean was a rational interpretation of the evidence, even though the evidence may also suggest an interpretation more favorable to the claimant) (citing *Magallanes*, 881 F.2d at 750); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming an ALJ's adverse credibility determination, despite "equivocal" testimony about how regularly the claimant engaged in her activities, because the ALJ's interpretation was reasonable).

The Court finds that this reason is a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### b. Reason No. 2: Inconsistent Statements and Conduct

The ALJ found that Plaintiff's testimony that she could walk up to one block at a time was inconsistent with her testimony that she regularly walks several thousand feet to her grocery store. (AR 36.) An ALJ may consider inconsistent statements by a claimant in assessing her credibility. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001); *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). At the hearing, Plaintiff testified that she can typically walk one block, or "a block or two" on a good day. (AR 64-65.) Plaintiff explained that she can walk to the grocery store "that's right around the corner from [her] house," which is "maybe a couple of thousand feet." (AR 69.) In context, Plaintiff's statements about "one

block" and her estimate of "a couple thousand feet" being "right around the corner" are not clearly inconsistent. Moreover, a single discrepancy fails to justify "the wholesale dismissal of a claimant's testimony." *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017) (citing *Robbins*, 466 F.3d at 883-84).

The ALJ also found that Plaintiff's conduct at the hearing—carrying a large purse, laughing, smiling, and "show[ing] no obvious signs of discomfort"—was inconsistent with her testimony that she was experiencing pain with a severity of 4 out of 10. (*Id.*) This purported inconsistency noted by the ALJ is potentially problematic, as a claimant's failure to exhibit pain at a hearing "provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that [her] allegations of constant pain are not credible." *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir. 1984) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156-57 (9th Cir. 1975)).

The Court finds that this reason is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### c. Reason No. 3: Symptoms Controlled With Medication

The ALJ found that, although Plaintiff suffered "occasional" symptom flare-ups, Plaintiff's Crohn's disease symptoms were "generally well controlled" with narcotics and Remicade. (AR 38; *see* AR 37.) Impairments that can be effectively controlled with medication are not disabling for the purpose of determining eligibility for social security benefits. *See Warre v. Comm'r Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

Plaintiff contends that her physicians regularly noted that her condition was uncontrolled. (JS 24-25; *see* AR 499 (May 2011); AR 473 (June 2012); AR 461 (December 2012); AR 617 (June 2013).) But the ALJ noted that in November 2014, Plaintiff reported that her condition had improved and was stable on Remicade. (AR 37; *see* AR 1461.) In January 2015, Plaintiff reported "feeling better" but continued to have mild flares of abdominal pain, unrelated to the timing

of her Remicade infusions. (AR 37; *see* AR 1583.) In February 2015, Plaintiff stated that she thought her flares and symptoms had improved by around 50% with the Remicade, and she was tapering off her use of narcotics. (AR 37; *see* AR 1467.) The ALJ did not err in discounting Plaintiff's testimony based on Plaintiff's documented improvement. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999) (holding that in assessing claimant's credibility, ALJ did not err in considering that medication "aided" claimant's symptoms).

However, after the ALJ's decision, Plaintiff submitted additional records—dated before the ALJ's decision date of May 14, 2015—to the Appeals Council. (*See* AR 2, 5.) The Appeals Council accepted and considered this new evidence, but it concluded that the additional evidence did not provide a basis for changing the ALJ's decision. (AR 2.) When the Appeals Council considers new evidence in denying review of the ALJ's decision, this Court considers on appeal both the ALJ's decision and the additional material submitted to the Appeals Council. *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *see Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]e have routinely considered evidence submitted for the first time to the Appeals Council to determine whether, in light of the record as a whole, the ALJ's decision was supported by substantial evidence.").

In March 2015, Plaintiff reported vomiting due to "severe abdominal pain," "above and beyond what she has experience previously." (AR 1868.) In April 2015, Plaintiff was documented to be "still in pain" with nausea and vomiting. (AR 1807, 1810.) A treating physician also noted that she had "progressively symptomatic" ileal Crohn's, and he suggested that "at this point[, Plaintiff] probably would benefit from [an] operation." (AR 1808.) On May 4, 2015, two doctors agreed that "she likely warrants surgery at this point." (AR 1805.)

///

///

Considering the new evidence, the ALJ's finding that Plaintiff's symptoms were "generally well controlled" is not a clear and convincing reason, supported by substantial evidence, to discount Plaintiff's credibility.

### d. Reason No. 4: Lack of Supporting Objective Medical Evidence

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins*, 261 F.3d at 857 (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ accurately summarized Plaintiff's medical records, noting her complaints of abdominal pain and the test results showing evidence of active Crohn's disease. (*See* AR 37-38.) The ALJ also observed that Plaintiff's condition and symptoms appeared to be controlled with treatment. (*Id.*) Acknowledging Plaintiff's frequent abdominal pain from Crohn's disease, the ALJ determined that the evidence nevertheless did not indicate that Plaintiff's symptoms were severe enough to prevent her from performing light work. (AR 38.) Although Plaintiff's treatment records may be interpreted in more than one way, the evidence can rationally support the ALJ's determination. Accordingly, the Court should uphold his interpretation of the evidence. *See Ryan*, 528 F.3d at 1198; *Robbins*, 466 F.3d at 882.

However, in light of the additional records discussed above, the Court is not convinced that the objective medical evidence continues to undermine Plaintiff's allegations and testimony. The new evidence appears to indicate that Plaintiff suffered a decline in her condition around the time of the April 2015 administrative hearing, to the point where surgery was recommended. (*See* AR 1868 (March 2015); AR 1807, 1810 (April 2015); AR 1805 (May 2015).)

Considering the new evidence, the Court finds that the lack of objective medical evidence is not a clear and convincing reason, supported by substantial

evidence, to discount Plaintiff's credibility. *See Burrell v. Colvin*, 775 F.3d 1133, 1139 & n.4 (9th Cir. 2014) (finding that the full record, including treatment records that were not before the ALJ but were considered by the Appeals Council, did not support an adverse credibility determination based on a lack of medical records); *see also Brewes*, 682 F.3d at 1163.

### 4. Conclusion

Because the Court found that three of the ALJ's reasons for discounting Plaintiff's credibility are not clear and convincing, the Court must decide whether the ALJ's reliance on those reasons was harmless error. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). The relevant inquiry "is not whether the ALJ would have made a different decision absent any error," but whether the ALJ's decision is still "legally valid, despite such error." *Id.* The "remaining reasoning *and ultimate credibility determination* [must be] . . . supported by substantial evidence in the record." *Id.* (emphasis in original) (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). Here, given the discussion above concerning Plaintiff's conduct at the hearing, her symptoms' response to treatment, and the objective medical evidence, the Court concludes the ALJ's credibility finding is not legally valid and supported by substantial evidence. Remand is therefore warranted on this issue.

### B. The Court Declines To Address Plaintiff's Remaining Argument

Having found that remand is warranted, the Court declines to address Plaintiff's remaining argument that the ALJ improperly evaluated the severity of her Crohn's impairment. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

## C. Remand For Further Administrative Proceedings

Because further administrative review could remedy the ALJ's errors, remand for further administrative proceedings, rather than an award of benefits, is warranted here. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (remanding for an award of benefits is appropriate in rare circumstances). Before ordering remand for an award of benefits, three requirements must be met: (1) the Court must conclude that the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the Court must conclude that the record has been fully developed and further administrative proceedings would serve no useful purpose; and (3) the Court must conclude that if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Id.* (citations omitted). Even if all three requirements are met, the Court retains flexibility to remand for further proceedings "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* (citation omitted).

Here, remand for further administrative proceedings is appropriate. The Court finds that the ALJ failed to provide clear and convincing reasons supported by substantial evidence to discount Plaintiff's subjective testimony. Additionally, the ALJ found that Plaintiff was "only credible to the extent that [s]he can do the work described herein." (AR 36.) This language "inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC." *Trevizo v. Berryhill*, 871 F.3d 664, 679 n.6 (9th Cir. 2017). Because symptom testimony must be taken into account when determining a claimant's RFC, "it cannot be discredited because it is inconsistent with that RFC." *Laborin v. Berryhill*, 867 F.3d 1151, 1154 (9th Cir. 2017); *see Garrison*, 759 F.3d at 1011 (citing 20 CFR 416.920(e)).

///

On remand, the ALJ shall reassess Plaintiff's subjective allegations in light of the new evidence of record and SSR 16-3p – Evaluation of Symptoms in Disability Claims, 2016 WL 1119029 (Mar. 16, 2016), which would apply upon remand. The ALJ shall then reassess Plaintiff's RFC in light of the reassessment of Plaintiff's subjective allegations and proceed through step four and step five, if necessary, to determine what work, if any, Plaintiff is capable of performing.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter for further proceedings consistent with this Order.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 26, 2018

*Rozella A. Oliver*
ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**